**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DANIEL BOTTORFF, et al.,** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**ISLAMIC REPUBLIC OF IRAN** )<br>)<br>**Defendants.** )<br>) | Civil Action No. 18-3122 (CKK) |

**PLAINTIFFS' STATUS REPORT**

Plaintiffs hereby file this Status Report setting forth a proposed course of action for the resolution of plaintiffs' claims against the Islamic Republic of Iran and to provide a detailed outline setting forth the specific evidence they intend to produce bearing on Iran's alleged liability for the fifty-nine attacks alleged in the Complaint, including a proposed schedule for the production of that evidence.

**I.      Summary of Proceedings**

This case arises from the deaths or grievous injuries sustained by American service members and civilian contractors in Iraq and Afghanistan between 2004 and 2012 as a result of a multifaceted terrorist campaign sponsored and perpetrated by Defendant the Islamic Republic of Iran ("Iran"). See Compl. ¶¶ 1-2 [Dkt. 1]. The 59 Plaintiffs, which include estates and/or family members of the deceased, and injured soldiers/civilian contractors and their family members, allege that they were killed or injured by Iraqi Shi'a terrorist cells established, funded and jointly directed by Iran's chief foreign proxy, Lebanese Hezbollah; Iran's terror apparatus, the Islamic Revolutionary Guard Corps ("IRGC"); and the IRGC's external operations directorate, the IRGC-Qods Force ("IRGC-QF") and other terrorist agents that included a

1

litany of Iraqi Shi'a terror groups referred to herein collectively as "Special Groups" operating in Iraq and Afghanistan. *Id.*

Proceeding under the Foreign Sovereign Immunities Act ("FSIA"), Plaintiffs allege that Iran provided massive material support, resources and training to these terrorist cells, including supplying them with specific lethal aid in the form of Explosively Formed Penetrators ("EFPs") – a particularly deadly type of anti-armor weapon along with the use of Improvised Explosive Devices ("IEDs") – and other weapons such as Improvised Rocket Assisted Munitions (IRAMs) and Rocket Propelled Grenades (RPGs). Iran provided these resources specifically intending that its proxies would attack U.S. service members on its behalf.

On December 18, 2018, Plaintiffs, citizens of the United States and members of the United States military or as civilian contractors filed a complaint against the Islamic Republic of Iran ("Iran"), asserting claims for compensatory and punitive damages under § 1605A(c) of the FSIA. *Id.* Plaintiffs properly effectuated service on Iran by sending two copies (along with translations) of the summons, complaint, and notice of suit to the Secretary of State for transmission to Iran via diplomatic channels. See 28 U.S.C. § 1608(a)(4). [Dkt. 14]. To date, Iran has not responded to Plaintiffs' complaint nor has it filed any appearance before the Court in this action.

On May 18, 2020, Plaintiffs filed a Motion for Entry of Default Judgment requesting that the Court enter judgment against Iran. See Pls.' Mot., ECF No. 15-1, at ¶ 8. The Court denied Plaintiffs' motion for default judgment, without prejudice, on November 7, 2020 on the basis that plaintiffs failed to demonstrate "that an exception under the FSIA deprives Iran of its sovereign immunity in this action." *See* ECF No. 16; Memorandum Opinion and Order, at ¶ IV, page 9.

Plaintiffs' now submit this status report with a detailed outline to provide further detail as to they intend to produce evidence bearing on Iran's alleged liability for the fifty-nine attacks alleged in the Complaint.

**II.      Resolving Evidentiary Issues with  Plaintiffs' Claims Against Iran**

Iran has a long and established history of providing material aid and support to terrorist organizations. Indeed, in other cases involving explosively formed penetrator (EFPs), this Court has previously concluded that Iran, through the Iranian Revolutionary Guards Corps, Quds Force and/or Hezbollah "furnished EFPs or the components thereof, facilitated training of Shi'a militia, and supported the militia's effective deployment of this weapon." *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 56 (D.D.C. 2019).

Plaintiffs' recognize, however, that entry of default judgment is not automatic and that they "must establish the linkage between a particular EFP attack and the Iranian role in the attack" to the satisfaction of the Court. *Id*. at 30.  The "satisfactory" evidence standard can typically be met through "uncontroverted factual allegations" supported by "document and affidavit evidence." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 59 (D.D.C. 2010). In default judgment cases, plaintiffs may present this evidence in the form of affidavits.  *Moradi*, 77 F. Supp. 3d at 65; *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 211 (D.D.C. 2012*); Kim v. Democratic People's Republic of Korea*, 774 F. 3d at 1050 (relying on affidavits of plaintiffs experts in finding that evidence was satisfactory to the court). Further, courts may take judicial notice of evidence presented in earlier litigation without necessitating the formality of having that evidence reproduced. *Fain v. Islamic Republic of Iran*, 856 F. Supp. 2d 109, 116 (D.D.C. 2012).

As mentioned in the previous status report, Plaintiffs' propose a procedure similar to the model established in *Karcher* v. *Islamic Republic of Iran*, Civil Action No. 16-232 (CKK) (D.D.C. Sep. 10, 2019). With the Court's Order denying the previously filed motion for default judgment in this case and the Memorandum Opinion in *Karcher* serving as guideposts, Plaintiffs' would re-submit a motion for default judgment together with documentary evidence and expert reports establishing Iran's liability under 1605A for each of the attacks at issue in this complaint. At this time we can clarify the following application and support of evidence that will be supplied to the court.

**A. General Liability Issues**

Plaintiffs will present government and expert reports supporting their claim that Iran provided material support for terrorist activity in Iran and Afghanistan that proximately caused injury and death to U.S. Service members from 2004-2011. As this court has noted, government reports can be admitted under the hearsay exception in Federal Rule of Evidence 803(8). *Karcher,* 396 F.Supp.3d at 16. Plaintiffs identified several government reports in their complaint such as U.S. Treasury Department Press Notifications (¶¶ 15, 50-53, 57), Executive Orders (¶¶ 4, 15), U.S. State Department Reports on Terrorism (¶¶ 12, 75, 79, 81). Plaintiff will submit the reports identified in its complaint along with additional government reports that will be relied upon and cited by their experts such as: Threat Assessments and Reports from the Director of National Intelligence; U.S. Department of Defense analyses and Reports; Joint Improvised Explosive Device Defeat Organization reports; and Multi-National Force – Iraq intelligence reports.

The general liability evidence in this case will involve substantial overlap with *Karcher* and Plaintiffs will identify with specificity and request judicial notice of the admitted evidence in *Karcher* which is relevant to the present case. *Rimkus v. Islamic Republic of Iran* (D.D.C. 2010) 750 F.Supp.2d 163, 17 ("courts in FSIA litigation have adopted a middle-ground approach that permits courts in subsequent related cases to rely upon the evidence presented in earlier litigation—without necessitating the formality of having that evidence reproduced—to reach their own, independent findings of fact in the cases before them.") However, Plaintiffs will likely need to submit additional evidence of Iran's material support of terrorism not presented in *Karcher*. For example, this case involves U.S. Service members injured in Afghanistan as well as Iran, whereas *Karcher* did not include any plaintiffs injure in Iran. Furthermore, the *Karcher* opinion was focused on EFPs. Furthermore FOIA requests are still outstanding and may reveal that some plaintiffs were injured by explosive devices not fitting the EFP classification, but whose injuries were nonetheless proximately caused by Iran's material support of terrorism.

### B. Explosively Formed Penetrators (EFPS)

As noted in Plaintiff's complaint, the IRGC-QF's "Department 2000" manages Iran's relationship with Hezbollah, which includes the flow of some of Iran's most sophisticated weapon systems, including military grade Explosively Formed Penetrators ("EFPs"), that were professionally manufactured and specifically designed by Iran and its agents to target U.S. and Coalition Forces' armor. See Compl. ¶¶ 5-7. Based on the currently available evidence and the guidelines in *Karcher* opinion, Plaintiffs can state that the following plaintiffs had EFPs deployed against them who were in vehicles or part of military convoys in which EFPs were deployed against them include Michael Yost, Adam Fargo, James Francis Costello, Douglas Fargo, Shaun Cook, Fredi Nicol, Tracy Rivers, Shane Smith, Ronald Poslusny, Chase Cullen,

and Jae Moon. Plaintiffs' counsel have been diligently pursuing FOIA requests and anticipate that upon receipt of the government reports more plaintiffs will be classified as having been injured by EFPs.

Plaintiffs intend to military reports and/or introduce expert affidavits confirming the determination of the deployment of EFPs which led to the deaths and/or grievous injuries of these Plaintiffs. For each plaintiff injured by an EFP, the following types of evidence (to the extent available or necessary) will be submitted: SIGACT Reports; U.S. Central Command IED Reports; Event Storyboards; CEXC Reports; Casualty Reports; Photographs; and Witness Declarations. For each Plaintiff, an expert will review this evidence, provide a summary of the attack, and provide an opinion as to whether the attack was conducted by an IRGC-sponsored Special Group. In submitting the evidence and reports regarding Plaintiffs injured by EFPs, Plaintiffs will be cognizant of the Court's guidelines in *Karcher*.

### C. Non-EFP Improvised Explosive Devices

Plaintiffs have previously noted in their complaint, Iran is responsible for training, funding and equipping some of these Shi'a extremist groups in Iraq and also providing advanced IED explosives and equipment to them. See Compl. ¶¶ 76-77. Plaintiffs intend to introduce military reports and/or expert affidavits confirming the determination of the deployment of IEDs which were provided or funded by the Islamic Republic of Iran and which led to the deaths and/or grievous injuries of these Plaintiffs. Upon review of the government reports of the attacks, Plaintiff's expert will produce a report providing an opinion as to whether the non-EFP was conducted by an IRGC-sponsored Special Group. Plaintiffs will further determine whether those injured by non-EFP devices can be grouped into broader categories allowing for a bellwether approach for liability findings.

### D. Improved Rocket Assisted Munitions/Rocket Propelled Grenades

Plaintiffs have previously noted in their complaint that Improvised Rocket Assisted Munitions (IRAMs) were a signature weapon of Shi'a militias in Iraq that were supplied by the Iranian Revolutionary Guard Corps. *Id* at 82. Furthermore, the use of Rocket Propelled Grenades (RPGs) were deployed by Hezbollah and the IRGC-QF provided Jaysh al Mahdi, the Promised Day Brigades, Kata'ib Hezbollah, Asa'ib Ahl al-Haq and other Shi'a groups with a variety of weapons used to target U.S. and Coalition Forces engaged in their post-2003 peacekeeping mission. See Compl. ¶¶ 65. The RPG-29 is antitank weapon with a tandem warhead and was the only rocket- propelled grenade that appeared in Iraq. *Karcher* v. *Islamic Republic of Iran*, Civil Action No. 16-232 (CKK) (D.D.C. Sep. 10, 2019), note 31. It was also used as a weapon against military aircraft, as with Plaintiff, Ryan Bowman. Plaintiffs intend to introduce military reports and/or expert affidavits confirming the determination of the deployment of any IRAM or RPG-29 explosives which led to the deaths and/or grievous injuries of these Plaintiffs.

### E. Evidence of Injuries

Plaintiffs propose that the Court first make liability findings for each Plaintiff and then assign a special master to make recommendations on compensatory damages. After a finding of liability by the Court, Plaintiffs will submit deposition testimony of the Plaintiffs and/or their beneficiaries and submit medical records. In some cases, Plaintiffs may require medical expert reports if the link between an injury and the explosive is unclear.

### III. Schedule for Submission of Evidence

Plaintiffs' noted in their previous status report and humbly requested that they be able to submit evidence related to each of the 59 attacks at issue in the Complaint, including expert

reports, by June 10, 2021. The reason for this extended period of time is to allow further FOIA requests to be completed. Despite Plaintiffs timely FOIA submissions to both the US Central Command and Army Central Command beginning in Aug of 2018, very few responsive documents have been produced to date. Furthermore, the request of additional time will allow for reports by Plaintiffs' experts to be written that will further help distinguish and describe the explosives used in these attacks.

    Respectfully submitted,

    /s/ Michael J. Miller
    Michael J. Miller, Esq.
    D.C. Bar No. 397689
    The Miller Firm LLC
    108 Railroad Avenue
    Orange, VA 22960
    Tel: (540) 672-4224

    **Attorney for Plaintiffs**

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 15th day of January 2021, a true and correct copy of the foregoing Plaintiffs' Status Report was filed electronically with the Clerk of Court using the CM/ECF system which will send a notification of such filing on all counsel of record.

                                        /s/ Michael J. Miller
                                        Michael J. Miller, Esq.