**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MICHAEL FISSLER, *et al.*,
        Plaintiffs

    v.

ISLAMIC REPUBLIC OF IRAN,
        Defendant.

Civil Action No. 18-3122 (CKK)

---

### AMENDED MEMORANDUM OPINION[1]

This case is one of many in this jurisdiction arising from terrorist attacks on coalition soldiers during the American invasion and occupation of Iraq. Plaintiffs are surviving U.S. servicemembers and heirs who seek to hold Iran responsible for the role it allegedly played in a number of these attacks. They have sued the Islamic Republic of Iran ("Iran") under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, asserting that Iran provided weapons to Shi'a paramilitary groups that they allegedly used to harm Plaintiffs. According to Plaintiffs, Iran equipped and trained these militias to execute attacks employing improvised explosive devices ("IEDs"), explosively formed penetrators ("EFPs"), and improvised rocket-assisted mortars ("IRAMs"). Before the Court is Plaintiffs' [29] Motion for Default Judgment and [37] Supplemental Motion for Default Judgment on behalf of Plaintiff Jonathan S. Schmidt. As Defendant has failed to appear, default has been entered, and Plaintiffs now move

---

[1]This Amended Memorandum Opinion amends the Court's [40] September 26, 2022 Memorandum Opinion. The Conclusion section of this Amended Memorandum Opinion is amended to include the names of Plaintiffs Ki Moon (mother of Jae Sik Moon, deceased), Robert Reuter, and Bobby Wilson, Jr., whose claims were encompassed by Plaintiffs' [29] Motion for Default Judgment, which this Court granted by means of its [39] Order accompanying the [40] Memorandum Opinion. This Amended Memorandum Opinion is also amended to correct some minor typographical errors.

1

for default judgment on liability only.  Upon consideration of the briefing,[2] the entire record, and

the relevant legal authority, the Court shall **GRANT** Plaintiffs' [29] Motion for Default Judgment

and [37] Supplemental Motion for Default Judgment on behalf of Plaintiff Jonathan S. Schmidt.

## I.    BACKGROUND AND FACTUAL FINDINGS

As explained in more detail in *Karcher v. Iran*,[3] 396 F. Supp. 3d 12 (D.D.C. 2019) (CKK),

the United States designated Iran as a state sponsor of terrorism in 1984.  *Id.* at 22.  During the

American occupation of Iraq, the Qods Force of the Islamic Revolutionary Guard Corps, a division

of the Iranian military, funded, armed, and coordinated with several Shi'a militias in Iraq to counter

American influence in the region.  *Id.* at 24-26.  Iran and Iranian-associated groups provided

funding and training to Iraqi militias.  *Roberts v. Iran*, --- F. Supp. 3d ---, 2022 WL 203540, at *4

(D.D.C. Jan. 24, 2022).  The Qods Force developed and provided a particular weapon, the EFP, to

these militias.  *Pennington v. Iran*, Civ. A. No. 19-796, 2021 WL 2592910, at *4 (D.D.C. June 24,

2021) (JEB).  The EFP is a particularly powerful IED that is capable of penetrating and destroying

up-armored Humvees and other U.S. military vehicles.  *Roberts v. Iran*, --- F. Supp. 3d ---, 2022

WL 203450, at *5.  A sophisticated explosive, it consists of a "steel pipe" with explosives packed

behind a "precision manufactured concave copper disk liner."  *Id.*

---

[2]  This Memorandum Opinion focuses on the following documents:
- The Complaint, ECF No. 1 ("Compl.");
- Plaintiff's Motion for Default Judgment, ECF No. 29 ("Mot.");
- Plaintiff's Supplemental Memorandum for Default Judgment on Behalf of Plaintiff Steven Julianna, ECF No. 33 ("Supp. Mem."); and
- Plaintiffs' Supplemental Motion for Default Judgment on Behalf of Plaintiff Jonathan A. Schmidt, ECF No. 37 ("Supp. Mot.")

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

[3]  For ease of reference, the Court refers to Defendant, the Islamic Republic of Iran, by the more commonly used "Iran."

As the Court explained in *Karcher*, and incorporating *Karcher*'s factual findings here, detonation requires a "two-step armed and triggering process." 396 F. Supp. 3d at 26 (internal quotation marks removed). The operator uses either a "command wire" or "remote frequency" (i.e., a physical wire as opposed to a radio frequency) to arm the EFP. *Id.* Once armed, an infrared sensor affixed to the EFP triggers detonation upon "sensing" the heat signature of a passing vehicle. *Id.* In part because the design and manufacture of an EFP "requires substantial technical expertise," the use of an EFP in an attack on U.S. servicemembers during the occupation "all but necessitates the inference that Iran was responsible" for the attack. *Karcher*, 396 F. Supp. 3d at 30 (emphasis omitted).

Ryan E. Thompson, the Plaintiffs' first proposed expert, opines that EFPs were responsible for the harms inflicted upon Chase Cullen, Adam Fargo, Jae Sik Moon, Robert Reuter, Shane Smith, Bobby Wilson, Jr., Nicholas McCoy, Michael Fissler, Dylan Hibbert, Nicholas McCarty, Jason Harrison, Steven Juliana, and Jonathan Schmidt. ECF No. 29-1 at 4-19 ("First Thompson Report"); ECF No. 33-2 ("Second Thompson Report"); ECF No. 37-2 ("Third Thompson Report"). Mr. Thompson is a licensed engineer with a specialty in systems similar to those at issue in this case and a retired Army lieutenant colonel. First Thompson Report at 3. While in the Army, Thompson was in a company that patrolled a military supply route between the Iraq-Kuwait border and Baghdad in order to clear it of IEDs, including EFPs. *Id.* at 4. Additionally, in both Iraq and Afghanistan, Thompson investigated IED incidents to educate U.S. and coalition forces about such weapons in all their local varieties. *Id.* The Court thus qualifies Mr. Thompson as an expert on IEDs, including EFPs, used against U.S. and allied forces in the most recent wars in Iraq and Afghanistan. In light of Thompson's expertise, and the analysis in *Karcher* connecting EFPs in

3

Iraq to Iran, 396 F. Supp. 3d at 30, the Court accepts Thompson's conclusions regarding Iran's responsibility for the EFP incidents at issue here.

The remaining attacks involved two other kinds of explosives, improvised rocket assisted munitions ("IRAMs") and vehicle-borne improvised explosive devices ("VBIED," also commonly known as "car bombs"). Plaintiffs' second proposed expert, Phillip Smyth, explains the engineering of these devices and their links to Iranian-backed terrorist groups in great detail. *See generally* ECF No. 29-1 at 22, Expert Report of Phillip Smyth re: Plaintiffs Joseph James III, Shaun Cook, Frida Catherine Nicole, and Randall Burns ("Smyth Report"). Smyth has published several articles on Iranian proxy groups and their tactics since 2006. *Id*. As a resident fellow at the Washington Institute for Near East Policy and the University of Maryland, he also researches and publishes on Iranian-backed militants operating in Lebanon, Pakistan, and other countries. *Id*. at 22-23. He has also given guest lectures at American universities, been featured in syndicated news outlets, and has testified before Congressional committees on the subject of Iranian proxy groups. *Id*. at 23-25. The Court therefore qualifies Mr. Smyth as an expert in (1) the relationships between Iran and the militia groups it has backed and (2) the explosive devices used in attacks by these groups.

As Mr. Smyth explains, Iran has lent critical support and guidance to an array of mostly Islamic terrorist organizations. As such, it has extensive influence over roughly 50 Shia militias in Iraq, including Kata'ib Hezbollah and Asa'ib Ahl al-Haq ("AAH"). *Id.* at 27-28. Iran has also developed a strategic relationship with the Taliban in Afghanistan—providing it with arms, training, and more—for the purpose of undermining the aims of the U.S. and its allies. *Id.* at 28-29. In a 2011 report, the U.S. State Department found that Iran had been arranging arms shipments to Taliban members since 2006, which included "rocket-propelled grenades, mortar rounds,

4

107mm rockets, and plastic explosives." *Id.* at 44. Iran provided training too: it created specialized camps to teach top Taliban combatants about IED and VBIED tactics, among other things. *Id*. at 49. In the camps, Iran urged their trainees to target U.S. and NATO interests with their new skills. *Id.* Furthermore, the U.S. Department of Defense has reported that Iran has offered bounties to Taliban and Al-Qaida fighters who killed Americans. *Id*. at 30. As the Smyth Report details, "[a]ttacks associated with these bounties can be assessed to include IED and EFP, small arms, and rocket attacks, based on the variety of attacks that have occurred in [Afghanistan] since 2003." *Id*. In addition to EFPs and VBIEDs, IRAMs are another kind of explosive that Iran-linked militants, particularly Kata'ib Hezbollah and AAH, frequently used against coalition forces. *Id*. at 32.

The Court is persuaded that Iran bears responsibility for the non-EFP attacks at issue here. As Smyth explains, Plaintiff Shaun Cook was the victim of an IRAM attack on Camp Rustimayah for which Kata'ib Hezbollah, an Iranian proxy, has taken credit. *Id*. at 32. Iran's involvement in the other non-EFP attacks is also sufficiently clear. Plaintiff Joseph James III was harmed by a buried VBIED on his way to the U.S. military base in Bagram, Afghanistan. ECF No. 29-1 at 342-43. Smyth states that burying IEDs is a tactic that is directly associated with certain Iranian proxies, one that has been spread to other Iran-backed groups by trainers in the Iranian Revolutionary Guard Corps ("IRGC"). Smyth Report at 34. In light of that fact, along with Iran's bounty offers, arms transfers, and training programs meant for Taliban and Al-Qaida members, the Court concludes that Iran facilitated this attack.

The Court attributes the major VBIED attack at Camp Sullivan that harmed Plaintiff Randell Burns to Iran as well. Less than a day after the attack, the Taliban claimed credit on Twitter. *Id*. at 40. The Twitter account, which has since been suspended, belonged to a known

Taliban spokesman. *Id.* Smyth states that particularly high-powered VBIED attacks, like the kind at Camp Sullivan, are a hallmark of Iranian involvement; Iranian proxies have committed substantially similar attacks across the Middle East. *Id.* at 46. Such assaults require extensive funding, explosive materials, technical acumen, and coordination. *Id.* Considering Iran's experience with such attacks, the dramatic increase in Iran's support for the Taliban in the lead up to the Camp Sullivan incident, *Id.* at 13-14, and the fact that Iran urged the Taliban fighters it trained to kill Americans, the Court credits the Smyth Report's conclusion that Iran had a substantial hand in this Taliban plot.

The IRAM attack on Frieda Catherine Nicole poses a slightly closer question. Nicole suffered injuries while reacting to a rocket attack on Camp Victory in July 2011. ECF No. 29-1 at 314-15. No one claimed credit for the attack, but, as Smyth points out, Kata'ib Hezbollah did claim a number of attacks on Camp Victory around that period. Smyth Report at 33. Camp Victory was a favorite target of Kata'ib Hezbollah and AAH, and "Iranian-backed Iraqi Shia militia forces drastically upped their attacks against U.S. forces during the 2010-2011 pullout period." *Id.* Consequently, the Court agrees with the Smyth Report that there is sufficient evidence, although circumstantial, to conclude that the Camp Victory attack was committed by an Iranian proxy like Kata'ib Hezbollah or AAH. *Id.*

On December 28, 2018, this case's original, underlying complaint was filed by the first group of Plaintiffs.[4] The complaint asserted claims against Iran for compensatory and punitive

---

[4] Daniel Bottorff, David Butler, Michael Copely, John Dehart, Thomas Edwards, Tyler Esselman, Obiama Eze, Jonathan Ferrer, Michael Fissler, Bernard Grosswiler, Jason Harrison, James Henry, Dylan Hibbert, Robert Howard, Michael Hunsucker, Darrell Inmon, Steven Juliana, Matthew Lewis, Anthony Lynn, Nicholas McCarty, Ernest Moore, Ryan Ninedorf, Timothy Pawlowski, Carlos Quarry, William Renfroe, Javiel Rivera, Randall Sandlin, Jonathan Schmidt, Jonathan Thompson, Jason Villarreal, Michael Yost, James Francis Costello, Jr. (individually and on behalf of the estate of James Francis Costello III), Douglas Fargo (individually and on behalf of the estate

damages under § 1605A(c) of the FSIA. *See generally* Compl. On January 22, 2020, Plaintiffs effected service of process upon Iran; Iran never responded and, to date, has not participated in this matter in any way. On May 18, 2020, Plaintiffs filed their first Motion for Default Judgment. The Court denied the motion without prejudice on November 7, 2020 because Plaintiffs had not yet demonstrated that Iran had caused their injuries in a manner that fell within an FSIA exception. *Bottorff v. Iran*, Civ. A. No. 18-3122 (CKK), 2020 WL 12947400, at *4-5 (D.D.C. Nov. 7, 2020). Such a showing was necessary to the court's subject matter jurisdiction over the case. *Id*.

On July 12, 2021, a Supplemental Motion for Default Judgment was filed for Chase Cullen, Adam Fargo, deceased, Jae Sik Moon, deceased, Robert Reuter, Shane Smith, Bobby Wilson, Jr., Nicholas McCoy, Michael Fissler, Dylan Hibbert, Nicholas McCarty, Jason Harrison, Shaun Cook, Freida Catherine Nicole, Joseph James III, and Randall Burns. The Court subsequently asked for supplemental briefing pertaining to the Plaintiffs for whom nothing was filed. On July 18, 2022, the following Plaintiffs were voluntarily dismissed: Daniel Bottorff, David Butler, Michael Copely, John Dehart, Thomas Edwards, Tyler Esselman, Jonathan Ferrer, Dernard Grosswiler, James Henry, Robert Howard, Michael Hunsucker, Darrell Inmon, Matthew Lewis, Anthony Lynn, Ernest Moore, Ryan Ninedorf, Timothy Pawloski, Carlos Quarry, William Renfroe, Javiel Rivera, Randall Sandlin, Jonathan Thompson, Jason Villareal, Michael Yost, James Francis Costello, Jr. (individually and on behalf of the estate of James Francis Costello, III), Ronnie Raley, Leo McKeon, David Cohick, Jr., Christopher Mitchell, Edward Ruvalcaba, Tracy

---

of Adam Fargo), Ronnie Raley, Leo McKeon, David Cohick, Jr., Shaun Cook, Christopher Mitchell, Frieda Catherine Nicole, Edward Ruvalcaba, Tracy Rivers, Sean Smith, Shane Smith, Ronald Poslusny, Paul Craig, Gilbert Amis, Nataya Battles (individually and on behalf of the estate of Michael Battles), Joseph Sykes, Chase Cullen, Nicolas McCoy, Bobby Wilson, Jr., Randall Burns, Robert Reuter, David Diaz, Robert Fragale, Joseph James III, Ryan Bowman, Jonathan Sparks, Young Moon (individually and on behalf of the estate of Jae Moon), and Ki Moon.

Rivers, Sean Smith, Ronald Poslusny, Paul Craig, Gilbert Amis, Nataya Battles (individually and on behalf of the estate of Michael Battles), Joseph Sykes, David Diaz, Robert Fragale, Ryan Bowman, and Jonathan Sparks.  ECF No. 32, Notice of Voluntary Dismissal.  Additionally, supplemental memoranda were submitted for Steven Juliana on July 18, 2022, ECF No. 33, and for Jonathan Schmidt on July 21, 2022, ECF No. 37.  Because no briefs were provided for Matthew Lewis, he and his claims are dismissed without prejudice for failure to prosecute.  As to all other plaintiffs, their claims are ripe for resolution.

## II.    LEGAL STANDARD

The entry of default judgment is governed by Federal Rule of Civil Procedure 55.  Where the damages sought from a defaulting party are not for a sum certain or are not readily susceptible to computation, "the party must apply for a default Judgment.  *Id.* (b).

Even then, "the entry of a default judgment is not automatic." *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005).  In ordinary civil litigation, "[t]he determination of whether a default judgment is appropriate is committed to the discretion of the trial court." *Karcher*, 396 F. Supp. 3d at 21.  Because "strong policies favor resolution of disputes on their merits[,] '[t]he default judgment must normally be viewed as available only when the adversary party has been halted because of an essentially unresponsive party.'" *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting *H.F. Livermore Corp. v Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir.1970) (per curiam).

A plaintiff seeking default judgment must persuade the court that it has subject-matter and personal jurisdiction. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  Under the FSIA specifically, a court may not enter default judgment against a foreign state "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."  28 U.S.C. §

1608(e); *Roeder v. Iran*, 333 F.3d 228, 232 (D.C. Cir. 2003).  "[T]he FSIA leaves it to the Court to determine precisely how much and what kinds of evidence the plaintiff must provide," *Han Kim v. Dem. Rep. of Korea*, 774 F.3d 1044, 1037 (D.C. Cir. 2014), and "[u]ncontroverted factual allegations that are supported by admissible evidence are taken as true," *Thuneibat v. Syrian Arab Rep.*, 16 F. Supp. 3d 22, 33 (D.D.C. 2016).

### III.    CONCLUSIONS OF LAW

In an FSIA case, default judgment as to liability may be entered when "(1) the Court has subject matter jurisdiction over the claims, (2) personal jurisdiction is properly exercised over the defendants, [and] (3) the plaintiffs have presented satisfactory evidence to establish their claims against the defendants." *See Braun v. Iran*, 228 F. Supp. 3d 64, 75 (D.D.C. 2017).  The Court takes up each in turn.

### A.  Subject Matter Jurisdiction and Liability

"The FSIA provides a basis for asserting jurisdiction over foreign nations in the United States."  *Price v. Social People's Libyan Arab Jamahiriya*, 294 F.3d 82, 87 (D.C. Cir. 2002).  Pursuant to the FSAI, the Court has "original jurisdiction" over "nonjury civil action[s]" against foreign states "without regard to amount in controversy" if the claims seek "relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-07 of this title or under any applicable international agreement."  28 U.S.C. § 1330(a).

"[A] foreign state is presumptively immune from the jurisdiction of the United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).  "[E]ven if the foreign state does not enter an appearance to assert an immunity defense, a [d]istrict [c]ourt must still determine that immunity is unavailable under the [FSIA]."  *Verlinden B.V. v. Cent. Bank of*

*Nigeria*, 461 U.S. 480, 493 n.20 (1983).  Here, the FSIA's state-sponsored terrorism exception to foreign sovereign immunity applies.

That exception provides that a foreign state is not immune from the jurisdiction of the federal courts in cases in which:

> Money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act or provision of material support or resources in engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1).  The exception, moreover, applies only to suits in which two additional requirements are met.  First, the claimant or victim must be a U.S. national, a member of the U.S. armed forces, or U.S. a government employee or contractor at the time the act of terrorism occurred.  *Id.* (a)(2)(A)(ii).  Second, the foreign state must be designated as a state sponsor of terrorism both at the time the act occurred (or was so designated as a result of the act) and at the time the lawsuit was filed (or was so designated within the six-month period preceding the filing of the suit).  *Id.* (a)(2)(A)(i)(I).

As in *Karcher*, Plaintiffs satisfy each requirement.  Iran has been designated a state sponsor of terrorism since 1984, at least one victim of each bellwether was a U.S. military servicemember or contractor; and the killings at issue did not take place in Iran.  *See supra* at 4-7; 396 F. Supp. 3d at 54.  Iran's support for its allied militia groups within Iraq also constituted "material support or resources" for "extrajudicial killing[s]."

The FSIA defines "material support or resources" to consist of:

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

10

18 U.S.C. § 2339A(b)(1).  Plaintiff's experts sufficiently establish that Iran provided "material support" including funds, weaponry, and training, to the Iranian-allied groups at issue.  *Supra* at 5-7.  *Cf. Karcher*, 396 F. Supp. 3d at 55 (holding that Qods Force and IRGC provided same or similar material support to same or similar groups here).

Plaintiffs also satisfy the "extrajudicial killing" prong.  As this Court explained in *Karcher*, "injuries resulting from 'deliberated' attempts to kill fall within the scope" of this clause.  396 F. Supp. 3d at 58; *accord, e.g.*, *Lee v. Iran*, 518 F. Supp. 3d 475, 492 (D.D.C. 2021) (APM).  In other words, Plaintiffs need not demonstrate fatalities in each attack, but rather that each attack was "undertaken with careful consideration, not on a sudden impulse," to inflict fatalities.  *Salzman v. Iran*, Civ. A. No. 17-2475, 2019 WL 4673761, at *13 (D.D.C. Sept. 25, 2019) (RDM).  As discussed above, Iran-linked militia groups clearly planned these attacks and incorporated tactics and training taught by Iran.  *Supra* at 5-7.  Although the IRAM attack on Frieda Catherine Nicole poses a slightly closer question, the Smyth Report sufficiently establishes that at least one Iranian-linked militia deliberately planned the attack that injured Nicole.  *Supra* at 6. Moreover, like EFPs, the provision of funds used to assemble and purchase VBIEDs and IRAMs, in addition to the provision of these weapons themselves, was meant "to kill people, not just disable vehicles." *Karcher*, 396 F. Supp. 3d at 56.  "Moreover, Iran wanted EFPs to be used against the U.S. military, which Iran saw as a threat to its objectives," *see id.*, just as Iran intended the IRAMs and VBIEDs at issue here be used against American servicemembers.

Finally, for the Court to have subject matter jurisdiction, Plaintiffs must show with sufficient evidence that Iran's "provision of material support or resources" caused Plaintiffs' "personal injury or death."  28 U.S.C. § 1605A(a)(1).  To establish causation, (1) "the defendant's actions must be a 'substantial factor' in the sequence of events that led to the plaintiff's injury"

11

and (2) "the plaintiff's injury must have been 'reasonably foreseeable or anticipated as a natural consequence' of the defendant's conduct." *Owens v. Rep. of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017) *vacated and remanded in irrelevant part sub. nom Opati v. Rep. of Sudan*, 149 S. Ct. 1601 (2020).

Plaintiffs have satisfied both components.  First, as to the EFP attacks, Iran's support was a "substantial factor" leading to Plaintiffs' injuries because Iran provided the funding, training, and weaponry that was used to injure Plaintiffs.  *See supra* at 5; *cf. also Lee*, 518 F. Supp 3d at 493 (involving similar attacks).  As to the VBIED and IRAM attacks, the Smyth Report makes clear that it was Iranian funds and training that substantially contributed to the creation and deployment of the VBIEDs and IRAMs at issue.   *See supra* at 5-7.  Second, Plaintiffs' injuries were also a reasonably foreseeable consequence of Iran's conduct. "It is clear from Iran's financial support and its provision of evolving and ever-more lethal weaponry to insurgents in Iraq that Iran reasonably anticipated—and indeed, intended—that its support would lead to the death and serious injury of U.S. soldiers." *Lee*, 518 F. Supp. 3d at 494; *Karcher*, 396 F. Supp. 3d at 56-57.  Needless to say, as to VBIEDs and IRAMs, the injuries at issue here are the reasonably foreseeable consequence of deploying this weaponry. *See Karcher*, 396 F. Supp. 3d at 56

The Court therefore concludes that Iran's material support for the extrajudicial killing and hostage taking involving in the attacks proximately caused Plaintiffs' injuries.  Altogether, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1605A(a)(1).

**B.  Personal Jurisdiction**

Although a personal jurisdiction defense can be waived in certain circumstances, the Court has "an independent obligation . . . to satisfy itself of its personal jurisdiction before entering a default judgment against a missing party." *Kaplan v. Cent. Bank of Iran*, 896 F.3d 501, 511 (D.C.

Cir. 2018).  "Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title."  28 U.S.C. § 1330(b).  "In other words, under the FSIA, subject matter jurisdiction plus service of process equals personal jurisdiction."  *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012) (internal quotation marks omitted).

The Court has already concluded above that it has subject-matter jurisdiction over the claims in this case.  Here, pursuant to 18 U.S.C. 1608(a)(4), Plaintiff served Iran by sending "two copies of the summons and complaint and a notice of suit" via the Secretary of State and the Foreign Interests Section of the Embassy of Switzerland in Tehran, Iran.  *See* ECF No. 14.  As service of process was effected per 18 U.S.C. § 1608, the Court has subject matter jurisdiction over Defendant.

### C. Timeliness

Actions under the FSIA's terrorism exception "may be brought or maintained" only if filed "not later than" the later of (1) "10 years after April 24, 1996" or (2) "10 years after the date on which the cause of action arose."   28 U.S.C. § 1605A(b).  Yet when a defendant "fail[s] to enter an appearance or submit a filing at any stage of [a] case[]," it forfeits any potential statute-of-limitations defenses.  *Maalouf v. Iran*, 923 F.3d 1095, 1108 (D.C. Cir. 2019).  A federal court has no authority to raise this statute of limitations defense "on behalf of an entirely absent defendant."  *Id.* at 1112.  Because Iran has not appeared in this case—and, therefore, has not raised a statute-of-limitations defense—such a defense is irrelevant here.

### D. Damages

Iran is liable for these attacks and damages can be awarded.  28 U.S.C. § 1605A(c) ("[D]amages may include economic damages, solatium, pain and suffering, and punitive

damages.")  However, pursuant to Plaintiffs' [18] proposed schedule in this case and the Court's

approach in *Karcher*, the Court shall defer the calculation of damages until after the preparation

of a report by a special master, to be appointed by the Court at a later date.  *See* 396 F. Supp. 3d at

65.

## IV.    CONCLUSION

For the foregoing reasons, in an exercise of its discretion, the Court **GRANTS** default

judgment against Defendant as to Plaintiffs Chase Cullen, Douglas Fargo (individually and on

behalf of the estate of Adam Fargo), Young Moon (individually and on behalf of the estate of Jae

Sik Moon), Ki Moon (mother of Jae Sik Moon, deceased), Robert Reuter, Shane Smith, Bobby

Wilson, Jr.,  Nicholas McCoy, Michael Fissler, Dylan Hibbert, Jason Harrison, Shaun Cook, Frieda

Catherine Nicole, Joseph James III, Randall Burns, Nicholas McCarty, Jonathan Schmidt, and

Steven Juliana.    All  claims  involving  Matthew  Lewis  are  **DISMISSED  WITHOUT**

**PREJUDICE** for failure to prosecute.  An appropriate order accompanies this Memorandum

Opinion.

Dated: 4/24/2026, nunc pro tunc 9/26/22              \_\_\_\_/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE